UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA LOURDES GARZA,<br><br>        Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:21-cv-00419-ADA-HBK<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANT DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND AFFIRM THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY [1]<br><br>(Doc. No. 14, 17)<br><br>FOURTEEN-DAY OBJECTION PERIOD |

      Maria Lourdes Garza ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income and disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 14, 17-18). For the reasons stated, the undersigned RECOMMENDS denying Plaintiff's motion for summary judgment, granting the Commissioner's cross-motion for summary judgment, and affirming the Commissioner's

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

decision.

## I. JURISDICTION

Plaintiff filed for disability insurance benefits on October 6, 2016, and supplemental security income on October 31, 2016. (AR 256-71). She alleged a disability onset date of February 10, 2016 in both applications. Benefits were denied initially (AR 106-07, 154-58), and upon reconsideration (AR 152-53, 161-65). A hearing was conducted before an Administrative Law Judge ("ALJ") on July 24, 2019. (AR 38-69). Plaintiff was represented by counsel at the second hearing, and testified at the hearing. (*Id.*). On September 17, 2019, the ALJ issued an unfavorable decision (AR 13-37) and on June 24, 2020, the Appeals Council denied review. (AR 1-6). The matter is before the Court under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 38 years old at the time of the hearing. (AR 47). She completed one year of college to become a certified nurse assistant. (*Id.*). She lives with her mom and dad, her four kids, her sister, and her sister's two kids. (AR 50-51). Plaintiff has work history as a certified nurse assistant and a restorative nurse assistant. (AR 49). Plaintiff testified that he could no longer work as a nurse assistant because of anxiety attacks, back pain, inability to balance in her lower extremities, inability to stand for long periods, inability to carry and lift, and fear of being separated from her kids. (AR 49-50, 57). She reported back pain and leg pain, difficulty standing, knee pain post-knee surgery, and fainting due to anxiety. (AR 58-61). Plaintiff testified that she has to elevate her knee every hour for 20-30 minutes. (AR 62).

## III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial

evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.  SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity,"

the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the

1  claimant is capable of performing other work in the national economy. 20 C.F.R. §§
2  404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also
3  consider vocational factors such as the claimant's age, education, and past work experience. 20
4  C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other
5  work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§
6  404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis
7  concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20
8  C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.  ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 10, 2016, the alleged onset date. (AR 18). At step two, the ALJ found that Plaintiff has the following severe combination of impairments: exogenous obesity; meniscus and anterior cruciate ligament tears of the left knee status post reconstructive surgery on August 8, 2017; fatty liver with mild hepatomegaly; hypertension; lumbar degenerative disc disease with radiculitis and myelopathy; asthmatic bronchitis; gastro-esophageal reflux disease; depressive disorder; anxiety disorder; posttraumatic stress disorder; panic disorder; and adjustment disorder with anxiety and depressed mood. (AR 19). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 20). The ALJ then found that Plaintiff has the RFC:

> to perform a wide range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a): the claimant can perform lifting 10 pounds occasionally and less than 10 pounds frequently, standing or walking for four hours, and unlimited sitting in an eight-hour workday with normal breaks. The claimant could no more than occasionally operate foot controls with her left lower extremity. She could occasionally balance, stoop, kneel, crouch, crawl, and climb

>ramps, stairs, ladders, ropes, and scaffolds. She must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration, and dangerous and unprotected workplace hazards such as unprotected heights and uneven terrain. She could have no more than occasional face-to-face interaction with the general public, supervisors, and coworkers, defined as no more than 1/3 of the workday with each group. The claimant cannot, more than occasionally, understand, remember, and apply information necessary to perform complex and detailed work tasks with occasionally defined as 1/3 of the workday. She cannot make judgments on complex and detailed work related job assignments or cope with the stress normally associated with semi-skilled or skilled employment.

(AR 22). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 30). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including document preparer, addresser, and assembler. (AR 30-31). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from February 10, 2016, through the date of the decision. (AR 31).

## VI. ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act and disability insurance benefits under Title II of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ erred by failing to develop the record before assessing the RFC; and
2. Whether the ALJ erred at step five.

(Doc. No. 14 at 13-17).

## VII. DISCUSSION

### A. Duty to Develop / RFC

"The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)) (internal quotation marks omitted). This

6

1  duty is "triggered when the evidence is ambiguous or when the record is inadequate to allow for
2  proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001);
3  *Thomas*, 278 F.3d at 958. However, the plaintiff bears the burden of presenting evidence in
4  support of her alleged disability. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

5  Plaintiff argues "by rejecting all of the medical source opinions pertaining to Plaintiff's
6  physical impairments during the adjudicated period, the ALJ erred by relying on his own lay
7  estimation of Plaintiff's functioning based upon his own interpretation of the raw clinical data."
8  (Doc. No. 14 at 14). This argument is misplaced. The opinions cited by Plaintiff's are those
9  offered by reviewing state agency consultants K. Lee, M.D., N. Shibuya, M.D., and J. Mitchell,
10 who opined that Plaintiff could perform a range of light work, including standing, walking, and
11 sitting for six hours in an eight-hour day, and Plaintiff could never climb ladders, ropes, or
12 scaffolds. (AR 28-29, 99-101, 141-44). As Plaintiff acknowledges, the ALJ did not reject these
13 opinions; rather, he accorded them only "some" weight and noted that "evidence available at the
14 hearing showed the claimant was more limited than previously determined." (AR 29). Thus, any
15 argument that the ALJ's duty to develop the record was triggered based on a wholesale rejection
16 of all of medical opinion evidence is distinguishable from this case. *Cf., e.g., Howell v. Kijakazi*,
17 2022 WL 2759090, at *10 (S.D. Cal. July 14, 2022) (ALJ's duty to develop the record triggered
18 where the ALJ rejected all of the opinion evidence, and the record did not contain an opinion or
19 interpretation of Plaintiff's existing functional limitations). Rather, the salient question here, also
20 arguably raised by Plaintiff, is whether the ALJ erred in assessing the RFC because he failed "to
21 explain how he reached the conclusion that Plaintiff has no sitting restrictions and that Plaintiff
22 can occasionally climb ladders, ropes, or scaffolds, despite all three physicians opining Plaintiff
23 can sit for only six hours in an eight-hour day and she can never climb ladders, ropes, or
24 scaffolds." (Doc. No. 14 at 14).

25 The RFC assessment is an administrative finding based on all relevant evidence in the
26 record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In
27 determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are
28 credible and supported by substantial evidence in the record. (*Id.*) (RFC determination will be

7

1    affirmed if supported by substantial evidence). However, an ALJ's RFC findings need only be
2    consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc.*
3    *Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Ultimately, a claimant's RFC is a matter for the
4    ALJ to determine. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it
5    is the responsibility of the ALJ ... to determine residual functional capacity.").

6    Defendant appears to concede that "although the ALJ generally adopted a more restrictive
7    sedentary RFC than found by the consultants, the ALJ did not explain why the ALJ found that
8    Plaintiff could sit for eight hours a day as opposed to six hours suggested by the [state agency
9    consultants], nor did the ALJ explain why the ALJ found that Plaintiff could occasionally climb
10   ladders, ropes or scaffolds as opposed to adopting the consultants' finding that Plaintiff could
11   never climb ladders, ropes or scaffolds." (Doc. No. 17 at 9); *see* SSR 96-8p ("If the RFC
12   assessment conflicts with an opinion from a medical source, the adjudicator must explain why the
13   opinion was not adopted."). The ALJ's failure to either provide reasons supported by substantial
14   evidence to reject the limitations opined by the state agency consultants, or to properly
15   incorporate them into the assessed RFC, constitutes error. *See Robbins v. Soc. Sec. Admin.*, 466
16   F.3d 880, 886 (9th Cir. 2006) ("an ALJ is not free to disregard properly supported limitations");
17   *Byrd v. Colvin*, 2017 WL 980559, at *8 (D. Or. Mar. 14, 2017) ("Here, the ALJ gave great weight
18   to [the] opinion, but the RFC failed to take into account all of the limitations identified by [the
19   doctor], and the ALJ failed to explain why she did not include the limitations in the RFC. As a
20   result, the ALJ erred in formulating the RFC.").

21   However, an error may be harmless if it is not prejudicial to the claimant or
22   inconsequential to the ALJ's ultimate nondisability determination. *See Tommasetti*, 533 F.3d at
23   1038 (citation omitted); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir.
24   2006) (reviewing court cannot consider an error harmless unless it "can confidently conclude that
25   no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability
26   determination."). Here, in response to the hypothetical propounded by the ALJ at the hearing, the
27   vocational expert testified that an individual with Plaintiff's age, education, work experience, and
28   the RFC outlined above, can perform the requirements of document preparer, addresser, and

1   assembler.  (AR 31, 65).  As noted by Defendant, the Dictionary of Occupational Titles ("DOT")
2   identifies all of these jobs as sedentary work, which generally involves sitting for approximately
3   six hours in an eight-hour workday, with standing and walking combined for no more than two
4   hours in an eight-hour workday.  (Doc. No. 17 at 9); DOT 734.687-018, available at 1991 WL
5   679950 (assembler); DOT 209.587-010, available at 1991 WL 671797 (addresser); DOT
6   249.587-018, available at 1991 WL 672349 (document preparer); 20 C.F.R. § 404.1567(a); Social
7   Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) (noting "[s]ince being on
8   one's feet required 'occasionally' at the sedentary level of exertion, periods of standing or
9   walking should generally total no more than about 2 hours of an 8-hour workday, and sitting
10  should generally total approximately 6 hours of an 8-hour workday.").  Moreover, none of the
11  occupations identified by the VE require climbing of ladders, ropes, or scaffolds.  (*See id.*).  Thus,
12  despite any error in considering the state agency opinions that Plaintiff could only sit for six hours
13  in an eight-hour workday and could never climb ladders, ropes or scaffolds, the error is harmless
14  because it is irrelevant to the ALJ's ultimate disability determination.  *Stout*, 454 F.3d at 1055
15  (error is harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability
16  conclusion).

17  **B. Step Five**

18       At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to
19  establish that (1) the claimant is capable of performing other work; and (2) such work "exists in
20  significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2);
21  *Beltran*, 700 F.3d at 389. The number of jobs available in the national economy can be calculated
22  by aggregating the numbers for multiple occupations.  20 C.F.R. §§ 404.1566, 416.966.  The
23  Ninth Circuit has not established a "bright-line rule for what constitutes a 'significant number' of
24  jobs." *Beltran*, 700 F.3d at 389.  The Ninth Circuit has held the availability of 25,000 national
25  jobs presents a "close call," but still constitutes a significant number of jobs, *Gutierrez v. Comm'r*
26  *of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014), but the availability of 1,680 national jobs does not
27  constitute a significant number of jobs. *Beltran*, 700 F.3d at 390-91.  The Ninth Circuit has found
28  "a comparison to other cases ... instructive." *Id.* at 389.

Here, the vocational expert ("VE") testified that a hypothetical individual of Plaintiff's age, education, work experience, and residual functional capacity could perform the requirements of representative jobs such as document preparer (50,000 in the national economy), addresser (10,000 jobs in the national economy), and assembler (25,000 in the national economy). (AR 31, 65). Based on the VE testimony, the ALJ concluded at step five that "considering [Plaintiff's] age, education, work experience, and [RFC], [she] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (AR 31). Plaintiff argues the ALJ failed to satisfy his burden at step five because he failed to establish there are a significant number of jobs in the national economy that Plaintiff can perform. (Doc. No. 14 at 15-17).

Plaintiff argues that the jobs of "addresser" and "document preparer" are obsolete in today's national economy and therefore cannot support the ALJ's finding at step five. (Doc. No. 16 at 15-16). Both parties offer case law that would tend to support their respective positions as to whether these jobs are obsolete. (Doc. No. 14 at 15-16; Doc. No. 17 at 11-12). However, the Court finds it unnecessary to consider this issue in this case because, as noted by Defendant, even without the addresser and document preparer jobs, the ALJ's finding at step five that work existed in significant numbers in the national economy was supported by VE testimony that a hypothetical person of Plaintiff's age, education, work experience, and RFC could perform the requirements of assembler, with 25,000 jobs in the national economy. (Doc. No. 17 at 12; AR 31, 65); *Buck v. Berryhill*, 869 F.3d 1040, 1051 & n.2 (9th Cir. 2017) (error may be harmless if VE has identified other jobs that claimant could do an there are a significant number of these jobs in the national economy); *Hernandez v. Berryhill*, 707 F. App'x 456, 458-59 (9th Cir. 2017) (finding any error at step five in considering two jobs was harmless because ALJ properly determined Plaintiff could perform one job identified by the VE that existed in significant numbers in the national economy). Plaintiff argues that the "remaining job of "assembler" only exists with 25,000 positions nationally, which is not a significant number of jobs in the national economy." (Doc. No. 14 at 16-17). This argument appears to be based on a misunderstanding of the Ninth Circuit holding in *Gutierrez*, and is therefore unavailing. As noted by Defendant, "[c]ontrary to

Plaintiff's misrepresentation, the Ninth Circuit has found that 25,000 national jobs constitute a significant number within the national economy. . . . In [*Gutierrez*], although the court found 25,000 national jobs to be a 'close call,' it ultimately found that it constituted a significant number of jobs that the claimant could perform because '25,000 jobs likely does not fall into the category of isolated jobs existing in very limited numbers.'" (Doc. No. 17 at 12 (citing *Gutierrez*, 740 F.3d at 527-29); *see also Carson v. Comm'r of Soc. Sec.*, 2020 WL 5039255, at *2 (E.D. Cal. Aug. 26, 2020) (noting "[c]ases looking at numbers *less than 25,000* vary somewhat widely on how many jobs need to exist to be considered 'significant.'") (emphasis added). Thus, the 25,000 assembler jobs identified by the VE at the hearing meets the legal threshold for a significant number of jobs within the national economy. The ALJ properly relied on the VE's testimony, and the Court finds no error at step five.

## VIII. CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ did not err by failing to develop the record, properly assessed the RFC, and did not err at step five. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 14) be DENIED.
2. Defendant's Cross Motion for Summary Judgment (Doc. No. 17) be GRANTED.
3. The district court AFFIRM the decision of the Commissioner of Social Security for the reasons set forth above.
4. The district court direct the Clerk to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14)

days after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:     June 14, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE